UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JAMES BRANNAN,

    Plaintiff/Counter-defendant,

-vs-                                                                   Case No. 1:12-cv-238-GRJ

GEICO INDEMNITY CO. and
GOVERNMENT EMPLOYEES
INSURANCE CO.,

    Defendants/Counter-plaintiffs.
_____/

## O R D E R

This is an action for uninsured motorist benefits arising out of an October 13, 2010, motorcycle accident in which Plaintiff James Brannan suffered injuries. There is no dispute that the at-fault driver was an uninsured motorist. At the time of the accident, Plaintiff was the policyholder of a motorcycle insurance policy issued by Defendant GEICO Indemnity ("Indemnity") (the "Motorcycle Policy") and was also the policyholder of an automobile insurance policy for three automobiles (the "Auto Policy") issued by Defendant Government Employees Insurance Company ("GEICO"). The issue before this Court is the amount of benefits to which Plaintiff is entitled under the policies. Defendant Indemnity tendered payment to Plaintiff of the $10,000 uninsured motorist ("UM") benefit under the Motorcycle Policy, but Plaintiff contends that he is entitled to an additional $300,000 in policy benefits, plus other compensation, because the UM benefits under the Motorcycle Policy should be stacked with the total $300,000 in UM benefits under the Auto Policy.

Plaintiff is proceeding pursuant to a Second Amended Petition for Declaratory Judgment and Relief (Doc. 44), in which he asserts claims for breach of contract (Count I), negligence (Count II), violation of Fla. Stat. § 627.4137 (Count III), and declaratory relief (Count IV) as to his entitlement to stacked UM coverage. GEICO filed a Counterclaim for Declaratory Relief (Doc. 53). The case is presently before the Court upon Defendants' Motions to Dismiss or Abate Counts II and III of the Second Amended Petition (Docs. 71, 72); GEICO's Motion for Partial Summary Judgment on its Counterclaim and Counts I and IV (Doc. 75); Indemnity's Motion for Partial Summary Judgment on Counts I and IV (Doc. 82); Plaintiff's Motion for Partial Summary Judgment (Doc. 102); GEICO's Motion for Partial Summary Judgment on Counts II and III (Doc. 104); and Indemnity's Motion for Partial Summary Judgment on Counts II and III (Doc. 106). Each party has responded to the opposing parties' motions, and the motions are therefore ripe for determination. For the following reasons, the Court concludes that Defendants are entitled to summary judgment in their favor on all of Plaintiff's claims and on Defendant GEICO's counterclaim.

## Undisputed Material Facts[1]

**I. The Policies**

**A. GEICO Auto Policy**

The facts that are relevant to the disposition of the pending motions may be summarized as follows. Plaintiff initially insured automobiles with Defendant GEICO in or around 1998. At the time of the accident, Plaintiff owned three automobiles which were insured under a Florida

---

[1]Except where indicated, this summary of the undisputed material facts is drawn from the parties' statements of material facts filed pursuant to N.D. Fla. Loc. Rule 56.1.

Family Automobile Insurance Policy ("Auto Policy") issued to him by GEICO. Doc. 1-1 pp. 52-83; Doc. 44; Doc. 53-1. Pursuant to the Auto Policy Declarations, the policy provided non-stacked UM coverage limits of $100,000/$300,000 each person/each occurrence. Doc. 1-1 pp. 52-83; Doc. 53-1; Brannan Duces Tecum Response p. 0233. Plaintiff expressly rejected stacked coverage when he signed the UM selection form for the Auto Policy on October 12, 2009. Doc. 53-2; Brannan Depo. Exh. 11; Brannan Duces Tecum Response pp. 0228-0233. The form states, *inter alia*, that:

> At a reduced rate, you have the option to purchase the non-stacked (limited) type of UM coverage. Under this option, if an injury occurs in a vehicle owned or leased by you . . . only the limits of coverage (if any) which apply to that vehicle will be used. (Note that there is no coverage under this policy for a person who is injured while occupying a motor vehicle or motorcycle owned by you or a family member who resides with you which is not covered under the liability coverages section of this policy.)

Plaintiff checked on the form: "I want Non-Stacked Uninsured Motorist coverage at the limit checked below: *(May not exceed the limits of your Bodily Injury Liability coverage.)*" Plaintiff also selected the $100,000/$300,000 coverage limit. Doc. 53-2; Brannan Depo. Exh. 11; Brannan Duces Tecum Response pp. 0228-0233. The language of this form was approved by the Florida Department of Insurance. *See* Doc. 104 Exh. D. Prior to November 10, 2009, Plaintiff did not carry UM coverage on his Auto Policy and expressly rejected such coverage. Brannan Depo. pp. 36-37. After electing UM coverage, every six months Plaintiff received a declarations page for the Auto Policy which contained the designation "UNINSURED MOTORIST/NONSTACKED." Brannan Depo. pp. 35-43.

**B.   GEICO Indemnity Motorcycle Policy**

In 2008, Plaintiff obtained a policy issued by Indemnity to insure his 2008 Suzuki V1800 Boulevard C50. *See* Doc. 103, Exh. B.  Although Indemnity issues both Auto and Motorcycle policies, they must be issued as separate policies.   Hood Depo. p. 99, Doc. 106 Exh. C.

On October 5, 2009, Plaintiff contacted Indemnity's toll-free call center and requested that towing and stacking UM coverage be added to the Motorcycle Policy, with limits of $10,000.00/$20,000.00 each person/each occurrence.  *See* Doc. 82-1, pp. 64-65, 68-69, 93-94 (Brannan depo.).  The representative who received and responded to Plaintiff's call was a licensed insurance agent by the name of Lacy Carter. *See* Policy Log Inquiry entry dated 10/5/09 in Exhibit 2 to Deposition of Robert Hood Doc. 89-2; Transcript of Deposition of Robert Hood at 28, 55, 17; Doc. 89-1; Doc. 103 Exh. C.

The UM coverage provisions, endorsements, and limitations of the Motorcycle Policy provide in relevant part:

**PART IV - Uninsured Motorists Coverage**

\* \* \* \*

**Losses We Pay**

*We* will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury sustained by a *covered person* and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *uninsured motor vehicle*. *We* will also pay for damages the *covered person* is legally entitled to recover for bodily injury caused by accident and arising out of ownership, maintenance or use of an *underinsured motor vehicle*.

\* \* \* \*

**Limits of Liability**

> 1. The limit of bodily injury shown on the Declarations as applying to "each person" is the limit *we* will pay for all damages sustained by one person as a result of one accident covered by this Part. The most *we* will pay for all such damages, sustained by one person as the result of one accident, is the sum of the "each person" limits for Uninsured Motorists coverage shown in the Declarations.

Doc. 1-1 pp. 46-47; Rule 26(a)(1) Disclosures; Brannan Depo. Exhs. *1, 5, 7*.

## II. <u>The Insurance Claim</u>

Following the accident, Plaintiff submitted a claim for UM benefits to Indemnity. Plaintiff, through counsel, requested an affidavit of insurance pursuant to Florida Statute § 627.4137. Indemnity claims manager, Rita Collier, prepared an affidavit of insurance coverage with respect to the Motorcycle Policy that confirmed that the Motorcycle Policy was issued on the 2008 Suzuki, and provided stacking uninsured motorist coverage in the amount of $10,000.00 per person. The affidavit then stated that the "number of listed vehicles" was "3". It further stated "Additional Insurance Coverage: None Known at this Time." Doc. 1-1 at 12. On November 11, 2010, Collier executed a second affidavit reflecting that the number of listed vehicles was "1". Doc. 1-1 at 14. On October 4, 2011, Indemnity claims manager Karen E. Hall, prepared a third affidavit reflecting that "[o]ther listed vehicles" was "[n]one." Doc. 1–1 at 50.

Plaintiff claimed that he was entitled to $10,000 UM coverage under the Motorcycle Policy and additional UM coverage under the separate Auto Policy in the amount of $100,000, stacked with his Motorcycle Policy. Doc. 103 Exh. E. GEICO denied UM coverage under the Auto Policy due to Plaintiff's express rejection of stacked coverage under that policy. Doc. 104, Exh. C. Indemnity tendered the $10,000 UM limit of the Motorcycle Policy to Plaintiff. Doc. 104, Exh. C.

### III. The Complaint and Counterclaim

Plaintiff asserts in Count I that Defendants breached their respective insurance policies by refusing to pay him UM benefits under each policy. In Count II, he contends that "Defendants agreed to provide Mr. Brannan with stacked uninsured motorist coverage under his Motorcycle Policy, such that the uninsured motorist coverage provided under his Motorcycle Policy would be stacked against the uninsured motorist coverage provided under his Auto Policy." He contends that Defendants owed him a duty to procure and issue a policy or policies that would provide him with the stacked coverage he requested, and that Defendants negligently breached that duty. In Count III, Plaintiff contends that Defendants violated Fla. Stat. § 627.4137 by failing to timely provide him with accurate, truthful, and timely policy information as required by the statute. In Count IV, Plaintiff seeks a declaration as to whether the coverage exclusions of the Auto Policy apply as a bar to coverage under that policy in light of Plaintiff's assertion that the Auto and Motorcycle policies could or should have been issued under a single policy. Doc. 44.

GEICO's counterclaim seeks a declaration that the Auto Policy does not provide any UM benefits to Plaintiff for the motorcycle accident, because the policy excludes from coverage injuries suffered while occupying a motorcycle owned by an insured, which is not insured under the Liability Coverages section of the Auto Policy. Doc. 53.

### Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court must

examine the materials on file and the record evidence "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## Discussion

**I. Defendants' Motions on Counts I, IV and GEICO's Counterclaim**

Both Defendants seek summary judgment on Counts I (breach of contract) and IV (Plaintiff's claim for declaratory judgment), and GEICO further seeks summary judgment on its counterclaim for declaratory judgment. Docs. 75, 82.

Interpretation of an insurance contract raises questions of law that the Court may resolve at the summary judgment stage. *See Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar., Co.*, 157 F.3d 843 (11th Cir. 1998); *Bedoya v. Travelers Property Cas. Co.*

*of America*, 773 F. Supp. 2d 1326 (M.D. Fla. 2011); *DEC Electric, Inc. v. Raphael Construction Corp.*, 558 So. 2d 427 (Fla. 1990). "Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." *Prudential Prop. & Cas. Inc. Co. v. Swindal*, 622 So.2d 467, 470 (Fla.1993). This Court may not "rewrite a contract of insurance, extending the coverage afforded beyond that plainly set forth in the insurance contract." *AAA Life Ins. Co. v. Nicolas*, 603 So.2d 622, 623 (Fla. 3d DCA 1992).

In this case, the Court is persuaded that pursuant to Florida law and the terms of the Motorcycle and Auto Policies at issue in this case, Plaintiff is not entitled to recover additional UM benefits based on the three vehicles insured under the Auto Policy because he expressly rejected stacking coverage for the Auto Policy and only purchased stacking coverage for the Motorcycle Policy.

Under Florida law, uninsured motorist coverages stack based on the number of premiums paid for traditional UM coverage. *Coleman v. Florida Ins. Guar. Ass'n, Inc.*, 517 So. 2d 686, 690-91 (Fla. 1988). However, in 1987 the Florida Legislature authorized non-stacking provisions in UM policies. Under Fla. Stat. § 627.727(1) & (9), traditional UM coverage is provided with limits that stack unless an insured selects coverage with policy provisions limiting UM coverage:

> By operation of [§ 627.727(1)], the insured receives stacked UM coverage unless the insured either makes a written rejection of the coverage . . . *or the insured elects to accept non-stacked UM coverage from the insurer.* . . . While the policy premium for non-stacked coverage is at least twenty percent less than the premium for stacked coverage, non-stacked coverage is subject to numerous coverage limitations that are not applicable to stacked coverage. . . . These

> limitations include not just the inability to add together (or "stack") the UM liability limits of two or more motor vehicle policies—which is the primary focus of the appellants— . . . but also the restriction that non-stacked coverage does not apply to an insured who is injured "while occupying any vehicle owned by such insured for which uninsured motorist coverage was not purchased." Therefore, a crucial distinction between stacked and non-stacked coverage that is overlooked by the appellants is that, unlike stacked coverage, *non-stacked UM coverage does not provide coverage for every vehicle that the insured owns—it only provides coverage for the vehicle on which the UM premium was paid.*

*Swan v. State Farm Mut. Auto. Ins. Co.* 60 So.3d 514, 517 -518 (Fla. 3rd DCA 2011) (quoting Fla. Stat. § 627.727(9)(d)) (emphasis added).

Plaintiff's Auto Policy provided non-stacked UM coverage for three automobiles. There is no dispute that Plaintiff did not insure the motorcycle under the Auto Policy, nor did he pay a UM premium under that policy for the motorcycle. The terms of the rejection form executed by Plaintiff – which the Court finds to be unambiguous – expressly provide that in exchange for a reduced premium "if an injury occurs in a vehicle owned or leased by you . . . *only the limits of coverage (if any) which apply to that vehicle will be used*." The form further made clear that the non-stacked UM coverage purchased under the Auto Policy did not extend to "a motor vehicle or motorcycle owned by you . . . *which is not covered under the liability coverages section of this policy*." Doc. 53-2. These coverage exclusions plainly bar coverage under the Auto Policy for Plaintiff's motorcycle accident.

Contrary to Plaintiff's assertion, the unavailability of another policy against which to stack the UM benefits under the Motorcycle Policy does not render that contract illusory. Florida courts have rejected this argument, noting that stacked coverage, such as the coverage purchased in the Motorcycle Policy, carries "a very valuable benefit . . . beyond just the ability to aggregate UM benefits." *Swan,* 60 So.3d at 519 (citing *Collins v. Government Employees*

*Ins. Co.* 922 So.2d 353, 355 (Fla. 3rd DCA 2006)). In *Collins*, the court rejected an insured's claim that she was entitled to a return of her stacked UM premium for the years she owned only one automobile because, absent the ability to aggregate or stack coverage with another vehicle, she received no benefit for the higher premium paid for stacked coverage. The court explained:

> We disagree. It is true that stacked uninsured coverage enables the insured to stack the coverage for one owned automobile onto the coverage of another owned automobile. That is not the only benefit of stacked coverage. Even with one automobile, should the insured have an uninsured motorist claim, stacked coverage provides certain benefits above those received with non-stacked. Section 627.727(9)(a)-(e) delineates the limitations in uninsured motorist coverage, in addition to the limitation of not being able to stack the coverage from one vehicle onto another, when non-stacked insurance is obtained for a twenty percent decrease in premium. When the insured purchases stacked coverage, the limitations of section 627.727(9)(a)-(e) do not apply thereby giving the insured certain benefits for the twenty percent additional premium even when only one vehicle is owned. Therefore, a benefit was received by [appellant] for the premiums she paid for stacked coverage.

*Collins*, 922 So.2d at 353. In this case, Petitioner's Motorcycle Policy – in contrast to the Auto Policy – was not illusory because it provided benefits unavailable under a nonstacking policy. *See id*. The Motorcycle Policy entitled Plaintiff to UM benefits even if he was occupying a different vehicle than the motorcycle insured under the policy. *See* Doc. 1-1, *Swan*, 60 So.3d at 519; *Collins*, 922 So.2d at 353.

Plaintiff seeks a declaration in Count IV as to whether the coverage exclusions of the Auto Policy apply as a bar to coverage under that policy in light of Plaintiff's assertion that the Auto and Motorcycle policies "could or should have" been issued under a single policy. Doc. 44. This claim appears to be interwoven with Plaintiff's negligence claim regarding the manner

in which the Motorcycle Policy was procured, and to that extent will be addressed below. As a matter of contract interpretation, Plaintiff's claims fail.

Accordingly, the Court concludes that Defendant GEICO is entitled to summary judgment on its counterclaim for declaratory relief that the Auto Policy does not provide any UM benefits to Plaintiff for the motorcycle accident, and therefore Plaintiff's breach-of-contract claim against GEICO also fails. Plaintiff's breach of contract claim fails as a matter of law as to Indemnity because the Motorcycle Policy plainly provides $10,000 in UM coverage, and it is undisputed that Indemnity tendered that amount to Plaintiff.

## II. **Defendants' Motions on Count II and Plaintiff's Motion**

Both Defendants seek summary judgment on Plaintiff's negligence claim, set forth in Count II. Docs. 104, 106. Plaintiff opposes Defendants' motions, and separately requests a partial summary judgment finding that Defendants owed Plaintiff certain duties as licensed insurance agents in the procurement of Plaintiff's insurance. Doc. 102. These motions are premised on Plaintiff's assertion that to the extent that it is determined that the policies cannot be stacked—as the Court has concluded—Plaintiff is entitled to recover against Defendants for negligence and/or breach of their fiduciary duty for failing to provide him with the requested coverage. Plaintiff asserts that even though the Defendants are insurance companies they can be held liable under a theory of negligence or breach of fiduciary duty because the Defendants acted in the role of both agent and insurance carrier when Plaintiff requested insurance coverage.

For the purposes of these motions, the Court will assume that Indemnity acted in the role of both agent and insurance carrier, by way of the call center through which Plaintiff

requested the Motorcycle Policy. As outlined above, the undisputed evidence reflects that Plaintiff contacted the call center and requested a motorcycle policy with stacking UM coverage. He was issued the Motorcycle Policy with stacking UM coverage, which, by its terms and in accordance with Florida law, followed Plaintiff wherever and whenever he might be injured by an uninsured motorist, and which was available to stack with any other UM coverage to which he was entitled under another policy. There is no evidence in the record that Plaintiff expressed any confusion during the call regarding the UM coverage under the Motorcycle Policy, or that he in fact requested something other than the policy he received. Plaintiff's deposition does not reflect that he requested an explanation or clarification as to how or whether his rejection of stacking UM benefits under the Auto Policy would affect his stacking UM benefits under the Motorcycle Policy. Plaintiff contends that Defendants could or should have issued one global policy for all of his vehicles, but there is no evidence that Plaintiff requested such a policy and the undisputed evidence establishes that even if Indemnity had provided coverage for Plaintiff's automobiles as well as the motorcycle, such coverage would have been issued as two policies. Robert Hood depo. p. 99.

Moreover, Plaintiff's execution of the unambiguous UM selection form rejecting stacking coverage under the Auto Policy bars his claim that Defendants negligently failed to procure or advise him regarding stacking UM coverage under the Motorcycle Policy. Fla. Stat. § 627.727(1) requires that uninsured motorist coverage be applicable to all, unless "an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." The statute was amended in 1984 to include the following: "If this form is signed by a named insured . . . it shall be conclusively presumed that there was an informed, knowing

acceptance of such limitations." Fla. Stat. § 627.727(9); *Mitleider v. Brier Grieves Agency, Inc*. 53 So.3d 410, 412 (Fla. 4th DCA 2011) (citing *Auger v. State Farm Mut. Auto. Ins. Co.*, 516 So.2d 1024, 1024 (Fla. 2d DCA 1987) (discussing the 1984 amendment to section 627.727)).

This conclusive presumption forestalls Plaintiff's claim that he was not informed regarding the relationship of the Motorcycle Policy UM coverage to the Auto Policy's non-stacking UM coverage. *Mitleider,* 53 So.3d at 412. "'The presumption created by § 627.727 cannot be rebutted by testimony that the person signing the rejection form did not read it. The consequences of signing any document or contract cannot be avoided by merely testifying that the document or contract was not read[.]'" *Id*. (quoting *White v. Allstate Ins. Co.*, 530 So.2d 967, 969 (Fla. 1st DCA 1988)).

Accordingly, the Court concludes that Defendants' motions for summary judgment on Plaintiff's negligence claim in Count II is due to be granted, and Plaintiff's motion for partial summary judgment is due to be denied.

## III. Defendants' Motions on Count III

Count III seeks unspecified damages against Defendants under Fla. Stat. § 627.4137. That statute provides that:

> (1) Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:
>
> (a) The name of the insurer.
>
> (b) The name of each insured.
>
> (c) The limits of the liability coverage.

(d) A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.

(e) A copy of the policy.

In addition, the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers. The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

(2) The statement required by subsection (1) shall be amended immediately upon discovery of facts calling for an amendment to such statement.

(3) Any request made to a self-insured corporation pursuant to this section shall be sent by certified mail to the registered agent of the disclosing entity.

Fla. Stat. § 627.4137 (2011).

Plaintiff contends that Defendants violated Fla. Stat. § 627.4137 by failing to timely provide him with accurate, truthful, and timely policy information as required by the statute.

Initially, there is nothing in the statute–which applies to insurers who provide "liability insurance coverage"–that suggests it applies to Plaintiff's UM policy. Moreover, as Defendants argue, there is nothing in the statute that creates a private cause of action against insurers by their insureds for violating the statute. Insureds ordinarily have available to them the same information required to be disclosed by the statute. There is no evidence in the record that suggests Plaintiff did not have his own policy information. It is evident that the purpose of the statute is to provide third-party claimants with a means to obtain information regarding liability insurance coverage that they otherwise would be unable to obtain. It is questionable whether the statute creates a cause of action against an insurance company even by a third party claimaint. *See Lucente v. State Farm Mut. Auto. Ins. Co.*, 591 So. 2d 1126, 1127 (Fla. 4th

DCA 1992) (§ 627.7264 "does not contain an implicit cause of action for a third party against an insurance company," and even if it did, such a claim could not be brought unless or until claimant obtained a judgment against the insured).

Therefore, even if the statute could be read to create a first-party cause of action, there is nothing in the record that suggests Plaintiff suffered any damages in connection with any violation of the statute by Defendants. In this case, Plaintiff received all UM benefits to which he was entitled under the Motorcycle Policy. On this record, the Court concludes that Defendants are entitled to summary judgment on Count III.

## Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED:**

1. Defendants' Motions to Dismiss or Abate Counts II and III of the Second Amended Petition (Docs. 71, 72) are **MOOT**;

2. GEICO's Motion for Partial Summary Judgment on the Counterclaim and Counts I and IV (Doc. 75), and Indemnity's Motion for Partial Summary Judgment on Counts I and IV (Doc. 82) are **GRANTED**;

3. Plaintiff's Motion for Partial Summary Judgment (Doc. 102) is **DENIED**;

4. Defendants' Motions for Partial Summary Judgment on Counts II and III (Docs. 104, 106) are **GRANTED**.

The Clerk must enter judgment in Defendants' favor, terminate any pending motions, and close the file.[2]

**DONE AND ORDERED** this 18th day of October 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

---

[2] The final pretrial conference scheduled for October 23, 2013 is cancelled.